#### IN THE UNITED STATES DISTRICT COURT IN AND FOR
#### THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LARRY PARKER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case No. 05-CV-0550-CVE-FHM |
| | ) |
| TOWN OF CHELSEA, KENNY WEAST, | ) |
| CHARLES BARNES, HOWARD DRAKE | ) |
| and REBECCA MURATET, | ) |
| | ) |
|     Defendants. | ) |

#### AMENDED OPINION AND ORDER

On September 29, 2006, this Court entered an Opinion and Order (Dkt. # 63) granting in part and denying in part defendants' Motion for Summary Judgment (Dkt. # 47). The Court granted summary judgment on all plaintiff's claims except his procedural due process claim and implied contract claim. In preparing the jury instructions for the trial, the Court came across additional case law which causes it to reconsider its decision with respect to the procedural due process and implied contract claims.[1] As a result, the Court enters this Amended Opinion and Order granting defendants' motion for summary judgment on both plaintiff's procedural due process and its implied contract claims.

In its September 29, 2006 Opinion and Order, the Court set forth the relevant facts to the case and the standard for summary judgment. The Court will not reiterate the facts or legal standard in this Amended Opinion and Order, as they remain the same.

---

[1] A partial summary judgment is merely an interlocutory judgment. The Court retains general discretionary authority to review and revise interlocutory rulings prior to entry of final judgement. Wagoner v. Wagoner, 938 F.2d 1120, 1122 (10th Cir. 1991); Riggs v. Scrivner, Inc., 927 F.2d 1146, 1148 (10th Cir. 1991).

**I.**

The Town of Chelsea operates under a statutory town board of trustees form of government. Dkt. # 48, Ex. A., Pelletier Affidavit. According to an Oklahoma statute, "Appointments and promotions in the service of a statutory town board of trustees government shall be made solely for the good of the service." OKLA. STAT. tit. 11, § 12-114. Oklahoma law unequivocally states that this provision authorizing city managers to remove employees "solely for the good of the service" does not create a property interest in continued employment under either Article 2, Section 7 of the Oklahoma Constitution or under the due process clause of the Fourteenth Amendment. Hall v. O'Keefe, 617 P.2d 196, 200 (Okla. 1980) (holding that "for the good of the service" does not confer upon city employees a property interest requiring due process protections within the meaning of the Oklahoma Constitution); Graham v. Oklahoma City, 859 F.2d 142 (10th Cir. 1988) (applying the Hall decision to a federal constitutional property interest claim, and holding that the language "for the good of the service" was insufficient to create a federal due process claim); Campbell v. Mercer, 926 F.2d 990, 993 (10th Cir. 1991) ("'For the good of the service' does not confer upon a city employee a property interest requiring due process protections.").

The Supreme Court has held that an employee may have a protected property interest in continued employment based on an ordinance, statute, <u>or</u> an express or implied contract and as determined under state law. See Bd. of Regents v. Roth, 408 U.S. 564, 576-78 (1972); Carnes v. Parker, 922 F.2d 1506, 1510 (10th Cir. 1991). The Court, in its previous opinion, focused on the fact that a protected property interest may arise by statute <u>or</u> implied contract. Thus, after determining that plaintiff did not have a property interest in his continued employment based on statute, the Court turned to whether plaintiff had a protected property interest under an implied contract theory. The Court did not

consider whether OKLA. STAT. tit. 11, § 12-114 precludes the existence of protected property interest based on an implied contract theory; it will address that argument now.

Plaintiff argues that he has a protected property interest in his continued employment based on the Employee Handbook, which allegedly created a contract between plaintiff and the Town. However, if the Employee Handbook did create an implied contract which, in turn, gave plaintiff a protected property interest in continued employment, then the Employee Handbook would directly contravene OKLA. STAT. tit. 11, § 12-114. The language in OKLA. STAT. tit. 11, § 12-114 is mandatory: "removals shall be made solely for the good of the service." (Emphasis added). Thus, the statute, by its own terms, precludes the possibility that the Town, via the Board of Trustees, could adopt an Employee Handbook that alters the nature of the Town's relationship with its employees. In other words, the Employee Handbook cannot supplant the conditions of employment provided by state statute.[2] The Board of Trustees does not have the power to adopt an Employee Handbook that is in conflict with the laws created by the Oklahoma legislature. Cf. Honnold v. Bd. of Comm'rs of Carter County, 177 P. 71, 72

---

[2] This argument was raised in a similar case, Metlon v. City of Oklahoma, 879 F.2d 706, 781 (10th Cir. 1989): "On appeal, the City challenges the court's determination that Mr. Melton had a property interest in his continued employment. It is well established that such a property interest may be created by a state statute, ordinance, or express or implied contract; and the sufficiency of the claim of entitlement must be decided by reference to state law. The City argues that the organic law of the City – the City Charter – provides that removal of a classified employee (such as Mr. Melton in this case) 'shall be solely for the good of the service.' This language has been authoritatively construed not to create a property interest in Oklahoma City employment. Thus, the City argues, neither the Police Department Policy Manual nor the City's Policies and Procedures Manual can supplant the conditions of employment provided for by the Charter." Id. at n.15 (internal quotations marks and citations omitted). In that case, the Tenth Circuit found the argument "compelling," but it did not rule on the issue because it was not properly raised before the trial court nor preserved for appeal. Nonetheless, here, the Court determines that this issue should be resolved in favor of the Town.

(Okla. 1916) (noting that a board is without power under state statute to enter into a particular contract, and thus entering into such a contract would constitute an ultra vires act).

In sum, the Court determines that plaintiff does not have a protected property interest in his continued employment on an implied contract theory because Oklahoma law, by definition, precludes the possibility that the Employee Handbook overrides the state statute. Thus, the Court determines that the Town of Chelsea is entitled to summary judgment on plaintiff's procedural due process claim.

**II.**

Plaintiff argues that there was an implied contract between the Town and himself based on the Employee Handbook. The Court previously noted that the Employee Handbook contained multiple disclaimers that it did not create an implied contract and that employees were at-will. See Dkt. # 48, Ex. H, Employee Handbook, §§ 100, 216, 406. However, in its previous order, the Court did not grant summary judgment on plaintiff's breach of implied contract claim because it reasoned that, under Oklahoma law, defendants' conduct could negate the effect of those disclaimers. But in light of the Court's reasoning on plaintiff's procedural due process claim, the Court must also reconsider its decision on the breach of implied contract. The disclaimers in the Employee Handbook are consistent with OKLA. STAT. tit. 11, § 12-114. The combination of the state statute and the disclaimers suggests that there was no implied contract changing the at-will nature of plaintiff's employment. Indeed, since the Town cannot adopt an Employee Handbook that conflicts with the state law, then the Employee Handbook cannot serve as the basis for an implied contract.

As the Court previously noted, when there is a disclaimer in an Employee Handbook, whether the disclaimer is effective is a close case under Oklahoma law. The efficacy of a disclaimer is a mixed question of law and fact; however, in some cases summary judgment is appropriate. See Avery v.

Hillcrest Med. Ctr., 815 P.2d 1215, 1217 (Okla. Civ. App. 1991) (affirming summary judgment for the employer on the discharged employee's breach of contract claim where (1) there were no assurances of job security in the handbook, (2) the employee had disclaimers in the manual denying any intention to create a contract of employment, and (3) the disclaimers were "bold and clear" and the policies were "unambiguous"); Johnson v. Nasca, 802 P.2d 1294, 1297 (Okla. Civ. App. 1990) (reversing the lower court's grant of summary judgment for the employer on the employee's breach of contract because "the handbook, when viewed in conjunction with a pattern and practice indicating the adoption and consistent use of these procedures, may lead reasonable minds to differing conclusions about the existence of implied contractual rights to use of the procedures"). In its previous order, the Court reasoned that there was a genuine issue of material fact whether the disclaimers were effective; however, when one considers the disclaimers in conjunction with the Oklahoma statute, it becomes clear that the Employee Handbook did not and could not have created a contract altering the nature of plaintiff's employment. Thus, the Court determines, as a matter of law, there was no implied contract between plaintiff and the Town. The Town is entitled to summary judgment on plaintiff's breach of implied contract claim.

### III.

**IT IS THEREFORE ORDERED** that defendants' Motion for Summary Judgment is **granted**. In its previous Opinion and Order (Dkt. # 63), the Court granted summary judgment to all plaintiff's claims except his procedural due process and breach of implied contract claims. Now, the Court amends that Opinion and Order to grant summary judgment to all plaintiff's claims, including the procedural due process and breach of implied contract claims. A separate judgment is entered herewith.

**DATED** this 13th day of October, 2006.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT