UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **LARRY PARKER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 05-CV-0550-CVE-FHM |
| ) | |
| **TOWN OF CHELSEA, KENNY WEAST,** ) | |
| **CHARLES BARNES, HOWARD DRAKE** ) | |
| **and REBECCA MURATET,** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |

**OPINION AND ORDER**

Now before the Court is the Notice of Lack of Jurisdiction and Motion to Dismiss (Dkt. # 91) filed by the only remaining defendant, Town of Chelsea ("Chelsea"). Chelsea argues that this Court lacks subject matter jurisdiction because the parties are not diverse and the only remaining claim is a state law claim. For the reasons set forth below, the Court finds that the motion should be **denied**.

**I.**

Plaintiff Larry Parker ("Parker") began his employment with Chelsea in 1995. Dkt. # 41, at 2. He was appointed to the position of police chief in 2001. Id. In March 2005, the Chelsea Board of Trustees ("Board") terminated Parker's employment after several officers expressed concerns about Parker's management of the "Chelsea Police Department Reserve Fund." Dkt. # 63, at 5. According to Parker, the Board did not notify him of the reason for his termination at that time. Dkt. # 41, at 4. Defendants Kenny Weast, Charles Barnes, Howard Drake, and Rebecca Muratet, all members of the Board, testified that they made the termination decision because: Parker did not

communicate well with other officers; he showed disrespect for the council members; and he did not allow the reserve officers to examine or use the "Chelsea Police Department Reserve Fund." Dkt. # 63, at 5. Parker submitted a written grievance to the Board after his termination. Dkt. # 41, at 6. The Board did not respond. Id.

In September 2005, Parker filed suit against Chelsea and the Board members who voted in favor of his termination. See Dkt. # 2. In his amended complaint, Parker asserted claims for due process violations, government infringement of his liberty interest, breach of an implied contract of employment based upon Chelsea's Employee Handbook, and intentional and/or negligent infliction of emotional distress. See Dkt. # 41. In September 2006, the Court granted summary judgment as to all of Parker's claims except his due process claim and breach of contract claim against Chelsea. See Dkt. # 63. The parties proceeded to prepare for the October 2006 trial. Three days before the trial and as a result of preparing proposed jury instructions, the Court granted summary judgment as to the two remaining claims. See Dkt. # 71. On November 10, 2006, Parker appealed the judgment as to his breach of contract claim and liberty interest claim. Parker v. Town of Chelsea, No. 06-5218, 2008 WL 1815728, at *1 (10th Cir. Apr. 23, 2008) (unpublished decision).

The Tenth Circuit affirmed the judgment on the liberty and protected property interest claims, but reversed it in part as to the breach of implied contract claim. Parker, 2008 WL 1815728, at *4. The Tenth Circuit found that Parker claimed to have an implied contractual right not only to (1) a protected property interest, but also to (2) certain employment safeguards. Id. at *1. The Tenth Circuit agreed with this Court that Parker was an employee at-will and could not have had a protected property interest in continued employment given the language of OKLA. STAT. tit. 11, § 12-114. Id. at *2. Nevertheless, the Tenth Circuit found that this Court failed to address the

separate issue of whether Parker had an implied contractual right to the grievance procedure to be followed during termination, as set forth in the Employee Handbook.[1]  Id.  The Tenth Circuit held that even an at-will employee may have an implied contractual right to certain employment procedures.  Id.

Accordingly, the Tenth Circuit found that a genuine issue of material fact exists as to whether Parker has an implied contractual right to the grievance procedure in the Employee Handbook, and whether Chelsea breached its contractual duty by failing to follow that procedure. Id. at *4.  "Oklahoma courts have held that inconsistencies between the language in a handbook and the employer's conduct and representations may create a factual issue precluding summary judgment."  Id.  The Tenth Circuit concluded, therefore, that "[b]ecause Mr. Parker has raised a genuine issue of material fact as to whether an implied contractual right existed to the use of the grievance procedure, and whether [Chelsea] is liable for its failure to follow that grievance procedure," the case should be remanded "for further proceedings on this issue." Id. at *4.

---

[1]  The Employee Handbook grievance procedure provides:

> If an employee feels he has been treated unfairly or if he has a complaint, he should discuss it with the supervisor/Trustee. The supervisor/Trustee shall attempt to resolve the problem promptly and fairly, and give his/her decision to the employee within ten working days.
> . . .
>
> If an employee is dissatisfied with the Trustee's decision, the employee may choose to submit the grievance in writing to the Board.

Id. at *3 (emphasis added).

3

This Court received the mandate from the Tenth Circuit on May 1, 2008. See Dkt. # 89. On May 16, 2008, this Court entered an Amended Scheduling Order setting the jury trial for July 21, 2008.[2] See Dkt. # 90, at 2. Four days later, Chelsea filed its motion to dismiss for lack of subject matter jurisdiction. See Dkt. # 91.

**II.**

Federal courts are courts of limited jurisdiction and, as the party seeking to invoke federal jurisdiction, plaintiff bears the burden of proving that jurisdiction is proper. See Southway v. Cent. Bank of Nigeria, 328 F.3d 1267, 1274 (10th Cir. 2003). A court lacking jurisdiction "cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974).

**III.**

Parker asserts several arguments as to why the Court has subject matter jurisdiction. Parker argues that the applicable federal case law is clear that the Court may exercise supplemental jurisdiction over Parker's state law claim. Dkt. # 100, at 2. Parker argues that "the issues surrounding the discovery process" provide sufficient reason for the Court to retain jurisdiction. Id. at 4. According to Parker, "[i]f the case is continued at the last minute, that preparatory time and energy are substantially wasted and can never be regained." Id. at 5. Parker argues that Chelsea's delayed attempt to avoid the long-awaited trial contravenes "judicial economy, convenience, fairness, and comity." Id. at 6. Parker further argues that a remand of this case to state court[3] would

---

[2]  At the pretrial conference held today, the trial was set specially for August 11, 2008.

[3]  This case cannot be remanded to state court, as it was filed here originally. See Dkt. # 2. However, this Court could dismiss for lack of subject matter jurisdiction.

require the parties to litigate admissibility of their discovery and depositions, to conduct additional discovery, to endure substantial delay, and to incur additional costs. Id. at 4, 6. Finally, Parker argues that the Tenth Circuit's failure to dismiss, sua sponte, the implied breach of contract claim indicates the existence of supplemental jurisdiction. See id. at 5.

By contrast, Chelsea argues that dismissal of Parker's implied breach of contract claim will not prejudice or harm the parties. Dkt. # 91, at 2. Chelsea argues that between November 10, 2006 (the appeal date) and May 1, 2008 (the mandate date), Parker's counsel had no reason to conduct any trial preparation. Dkt. # 101, at 1. Chelsea argues that Parker's counsel has spent only a small amount of time and energy preparing for trial after remand. Id. Chelsea notes that Parker's counsel has not sought additional discovery since the mandate; in fact, Parker's current exhibit and witness lists mirror the exhibit and witness lists prepared on the eve of the (expected) trial. Id. Chelsea argues that the time and expense previously incurred in preparing for trial, when "the complaint contained both federal and state claims," constitute sunk costs which are not relevant to the Court's inquiry here. See Dkt. # 101, at 2 (emphasis added). Chelsea further argues that the Court should decline to exercise of supplemental jurisdiction because: (1) Chelsea filed its motion to dismiss shortly after the jurisdictional issue became ripe; (2) Parker will be able to file a new claim in state court; (3) the discovery in this case is "fully reusable"; and (4) this case presents "unique" questions of state law that should be decided by the Oklahoma courts.[4] Dkt. # 91, at ; Dkt. # 101, at 3-4.

---

[4]  Chelsea summarizes the novel questions as: (1) "whether, under a town board form of government, an implied employment contract can create enforceable post-termination grievance procedures[;]" and (2) "whether such procedures conflict with the town board's authority to fire employees 'for the good of service' and are therefore unenforceable as against public policy." Dkt. # 91, at 2 (emphasis added).

A federal district court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966), the United States Supreme Court held that supplemental "jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in consideration of judicial economy, convenience and fairness to litigants."[5] Id. The Court found that if a plaintiff's "federal claims are dismissed before trial," the plaintiff's "state claims should be dismissed as well." Id. The Court noted that supplemental jurisdiction is an issue "which remains open throughout the litigation." Id. at 727. The Court also recognized that while "the already completed[]course of the litigation" is certainly a consideration, "dismissal of the state claim might even then be merited." Id. (emphasis added).

The Supreme Court made clear in Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n.7 (1988), however, that Gibbs did not create an inflexible rule mandating dismissal. The Court reiterated that "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." Id. at 350. Focusing on the stage of the litigation, the Court then found that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. at 350 n.7 (emphasis added).

---

[5]  The text of Gibbs actually refers to "pendent jurisdiction," which is the predecessor of the modern nomenclature, "supplemental jurisdiction." For simplicity's sake, the Court uses only the latter terminology.

The Tenth Circuit decisions appear to hinge on specific Gibbs/Carnegie-Mellon factors. In Thatcher Enterprises v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir. 1990)), the court held that "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." While a federal "district court has discretion to try state claims in the absence of any triable federal claims," this discretion should be exercised only "in those cases in which, given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction." Id. ; see Olcott v. Del. Flood Co., 76 F.3d 1538, 1549-50 (10th Cir. 1996) (applying Third Circuit law but noting the Tenth Circuit rule that a district court "should consider the particular circumstances of the case" in determining supplemental jurisdiction). Similarly, in Jones v. Intermountain Power Project, 794 F.2d 546, 550 (10th Cir. 1986), the court held that a "federal court justifiably may retain jurisdiction of pendent [state law] claims if substantial time and energy have been expended on the case prior to disposition of the federal claims[,]" particularly when the complaint does not present "novel or unsettled questions of law."

In Ball v. Renner, 54 F.3d 664, 669 (10th Cir. 1995), the court focused its analysis on the "notions of comity and federalism" stressed in Thatcher. The court found that "'compelling reasons' point[ed] strongly in favor of state rather than federal court resolution of the [plaintiff's] state law claim." Id. The plaintiff still could pursue her tort claim in state court. Id. Further, an interim decision by the state supreme court had "taken an extended fresh look at the elements" of the plaintiff's cause of action. Id. The court concluded that "[w]here a state law cause of action is thus in a process of current evolution, it is particularly appropriate for the federal courts to leave the continuing development and application of that cause of action to the state courts." Id.; see Snyder

7

v. Murray City Corp., 124 F.3d 1349, 1354-55 (10th Cir. 1997) (reversing a district court's decision to exercise supplemental jurisdiction over state law claims where the claims presented complex issues of evolving state law). More recently, the Tenth Circuit has reiterated that, "[i]n general, when federal claims are disposed of prior to trial, the district court may decline to exercise supplemental jurisdiction over state law claims and allow the plaintiff to assert those claims in state court." Summum v. Duchesne City, 482 F.3d 1263, 1276 (10th Cir. 2007).

Here, this case presents a unique set of circumstances not touched upon by the foregoing precedent. The issue of this Court's supplemental jurisdiction did not become ripe until the Tenth Circuit issued the May 1, 2008 mandate. Prior to that time, there were federal claims in this lawsuit. Chelsea did not wait three years to raise the supplemental jurisdiction issue in an attempt to delay the long-awaited trial; Chelsea simply waited to raise the issue until it became ripe.

Nevertheless, dismissal of a federal claim on appeal does not automatically compel dismissal of a pendent state law claim on remand. United Int'l Holdings, Inc. v. Wharf (Holdings) Limited, 210 F.3d 1207, 1222 (10th Cir. 2000). The balance of factors must point toward declining the exercise of supplemental jurisdiction. Carnegie-Mellon, 484 U.S. at 350 n.7. The Court finds that the particular circumstances of this case do not weigh in favor of dismissal. This case, unquestionably, is not in the early stages of litigation. While the Court acknowledges that the federal claims were technically dismissed "prior to trial," Summum, 482 F.3d at 1276, the Court cannot ignore the fact that discovery is complete, pretrial proceedings are complete, and the scheduled trial is a month away. Regardless of whether Parker may refile his claim in state court or reuse discovery documents, the Court "justifiably" may retain jurisdiction of Parker's breach of contract claim "if substantial time and energy have been expended on the case prior to disposition

8

of the federal claims." Jones, 794 F.2d at 550.  Finally, to the extent Chelsea's argument regarding the "unique" issues of state law may intimate notions of comity and federalism, the Court finds that the Tenth Circuit's opinion, see Parker, 2008 WL 1815728, at *2-4, as well as Oklahoma precedent, see e.g., Kester v. Stilwell, 933 P.2d 952 (Okla. Ct. App. 1997), sufficiently address these issues to assuage any concerns.  The Court concludes, therefore, that the unique circumstances of this case merit the Court's exercise of supplemental jurisdiction.

**IT IS THEREFORE ORDERED** that the Notice of Lack of Jurisdiction and Motion to Dismiss (Dkt. # 91) is **denied**.

**DATED** this 20th day of June, 2008.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT